

E-FILED
Wednesday, 21 October, 2020 05:20:34 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## AT ROCK ISLAND

OCT 2 0 2020

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **Criminal No.  20-40056** |
| v. | ) | |
| | ) | **VIO:  Title 18, United States Code,** |
| ERIK RICHARD JONES, | ) | **Section 1344, 1349, and 1957** |
| MITCHELL ALLEN MELEGA, | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

1. At all times material to this Indictment:

(a) I-80 Equipment LLC ("I-80 Equipment") was a company that specialized in reconditioning and reselling vehicles, typically bucket trucks, with its principal place of business located at 20490 E. 550th Street in Colona, Illinois.

(b) Defendant ERIK RICHARD JONES was the sole owner of I-80 Equipment.   JONES was also the owner of the business entities known as Jones Lease Properties LLC ("Jones Lease"), and J.P. Rentals LLC ("J.P. Rentals").

(c) Defendant MITCHELL ALLEN MELEGA was the Controller of I-80 Equipment.

(d) First Midwest Bank was located in Moline, Illinois, and was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

(e) Northwest Bank was located in Davenport, Iowa, and was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

## **THE BANK FRAUD SCHEME**

2.      Beginning in or about August of 2016, and continuing through at least November of 2017, in the Central District of Illinois, and elsewhere, the defendants,

### **ERIK RICHARD JONES, and**
### **MITCHELL ALLEN MELEGA,**

did devise a scheme and artifice to defraud First Midwest Bank and Northwest Bank, both financial institutions the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain moneys and funds owned by and under the custody and control of First Midwest Bank and Northwest Bank, by means of false and fraudulent pretenses, representations, and promises, which scheme is described in substance in the following paragraphs.

3.      On or about March 10, 2014, JONES, operating I-80 Equipment, executed a Loan Agreement and Promissory Notes with First Midwest Bank to obtain working capital lines of credit for I-80 Equipment.  In subsequent years, JONES executed a series of renewal loan agreements with First Midwest Bank, and in sum and substance, all loan agreements provided that First Midwest Bank would extend to I-80 Equipment a working capital line of credit loan, which was to be used to fund vehicle purchases and improvements.

4.      Under the terms of the loan agreements, First Midwest Bank would fund 80% of the cost for I-80 Equipment to purchase vehicles and towards improvements to the vehicles. Vehicle purchases that were funded by First Midwest Bank would then be identified on a specific vehicle inventory and tracked by VINs or other traceable identification numbers as collateral on the lines of credit.  First Midwest Bank also required I-80 Equipment LLC to make interest-only payments towards the advanced funds for the 15 months after the advance was

made. After that 15 month anniversary of the advance, monthly principal and interest payments were required based on a four year amortization of the outstanding balance of the advance.

5.      Under the terms of the loan agreement, at the time of the sale of any vehicle included as specific vehicle inventory, I-80 Equipment was required to make payment to First Midwest Bank to pay off outstanding principal and accrued interest associated with the advance made for the vehicle sold.

6.      When I-80 Equipment wanted to request a loan advance to purchase a vehicle, I-80 Equipment personnel, typically defendant MELEGA, would send a request for an advance by email.  In order to obtain loan advances, I-80 Equipment would first provide to First Midwest Bank information about the specific vehicles to be purchased, including purchase receipts or invoices containing vehicle information such as manufacturer, model year, VIN, seller, purchase date, and the purchase price.  I-80 Equipment would also typically provide a spreadsheet, which listed identifying information for vehicles included in the specific vehicle inventory and the current borrowing base for each vehicle held on the line of credit. First Midwest Bank would approve loan advances at 80% of I-80 Equipment's vehicle purchase cost as shown in the email request and attached documents.

7.      First Midwest Bank personnel would review the request, and if approved, would typically deposit the amount of the requested loan proceeds for the specifically-approved vehicles into I-80 Equipment's operating bank account.  The loaned funds were only to be used by I-80 Equipment to finance the vehicles specifically requested, not for any other purpose, and First Midwest Bank retained a security interest in the vehicles that were purchased with the line of credit.  I-80 Equipment was to provide vehicle titles to First Midwest Bank within 90 days of

3

purchase.  Upon I-80 Equipment selling the vehicle, I-80 Equipment was required to repay First

Midwest Bank related to the vehicle advance.  In turn, First Midwest Bank would release the title

to I-80 Equipment.

8.       As part of the scheme and artifice to defraud, the defendants submitted and caused

to be submitted advance requests for funds to First Midwest Bank for vehicle purchases that they

knew I-80 Equipment was not purchasing.  The defendants supported and caused to be supported

these advance requests with forged and fraudulent invoices purporting to show vehicle purchases

by I-80 Equipment when, as the defendants then and there well knew, I-80 Equipment had no

such agreement to purchase said vehicles for the claimed purchase price.  Once the funds were

deposited into I-80 Equipment's account, the defendants, without First Midwest Bank's

knowledge or authorization, diverted the vehicle loan proceeds to other unauthorized uses.

9.       As a further part of the scheme and artifice to defraud, the defendants also

submitted and caused to be submitted advance requests for funds to First Midwest Bank with

invoices for vehicles that I-80 Equipment actually was purchasing, but with the legitimate

invoices altered to fraudulently inflate the purported purchase price of the vehicles beyond what

I-80 Equipment had actually agreed to pay.  Because I-80 Equipment's loan agreement with First

Midwest Bank provided that the bank would provide financing to I-80 Equipment for up to 80%

of the purchase price, the end result of the inflated invoices and advance requests was that First

Midwest was fraudulently induced to advance additional funds beyond the 80% its agreement

with I-80 Equipment called for.

10.      As a further part of the scheme and artifice to defraud, the defendants submitted

and caused to be submitted advance funding requests to First Midwest Bank against the line of

credit to fund additional improvements to specific vehicles I-80 Equipment had purportedly purchased and was reconditioning or otherwise improving. But, as the defendants well knew, some of these vehicle improvement advance requests were false and fraudulent, and included requests made to improve vehicles I-80 Equipment had not actually purchased and therefore, was not actually improving. As with other fraudulently-obtained loan proceeds, once the funds were deposited into I-80 Equipment's account, the defendants, without First Midwest Bank's knowledge or authorization, converted the vehicle improvement loan proceeds to other unauthorized uses.

11.    In approximately July of 2016, defendant ERIK JONES, on behalf of J.P. Rentals, requested a loan from Northwest Bank to purchase a 32 unit apartment complex located in Silvis, Illinois, and to fund improvements to that property. On or about July 29, 2016, JONES, on behalf of J.P. Rentals executed a Commercial Real Estate Mortgage with Northwest Bank to obtain loan funding, not to exceed a maximum principal amount of $1,959,894. On or about that same day, $1,540,000, drawn on J.P. Rentals' note with Northwest Bank, was transferred to purchase the apartment complex.

12.    As a further part of the scheme and artifice to defraud, the defendants made and caused to be made additional loan requests to Northwest Bank against the remaining loan funds, which were to be used to fund improvements to the property, knowing full well that the loan proceeds would not be used to fund improvements, but instead diverted to other uses without Northwest Bank's knowledge or approval.

## ACTS IN FURTHERANCE OF THE BANK FRAUD SCHEME

13.     On or about August 3, 2016, defendants JONES and MELEGA directed an I-80 Equipment employee to obtain a list of vehicles from a vehicle supplier for the purpose of submitting them to First Midwest Bank as if I-80 Equipment were purchasing them, obtaining advances against the purported purchases, then diverting the money to pay other past due bills of I-80 Equipment.

14.     On or about August 5, 2016, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulent vehicle invoices purporting to represent the sale of 23 specific vehicles from the list obtained by the employee to I-80 Equipment, when in fact, no such agreement to sell the vehicles existed.

15.     On or about August 5, 2016, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the 23 vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

16.     On or about August 5, 2016, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $776,867.20 for the purported purchase of 23 specific vehicles, and attaching the forged invoices purporting to document the sale of the 23 specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

17.     On or about August 9, 2016, defendants JONES and MELEGA discussed drawing funds from the Northwest Bank commercial real estate loan that was to be used to purchase and

6

renovate an apartment complex in Silvis, Illinois, and instead diverting them to pay expenses of I-80 Equipment.

18.     On or about August 12, 2016, defendants JONES and MELEGA caused $225,000 to be drawn against the Northwest Bank apartment complex loan and deposited into J.P Rentals' checking account at Northwest Bank.

19.     On or about August 13, 2016, defendants JONES and MELEGA caused a $200,000 check to be drawn on J.P. Rentals' Northwest Bank checking account, made payable to I-80 Equipment, and deposited into I-80 Equipment's bank account at First Midwest Bank.

20.     On or about August 16, 2016, defendants JONES and MELEGA caused a $70,180.79 payment to an I-80 Equipment creditor to be made from funds in I-80 Equipment's First Midwest Bank account.  This payment was made to one of the creditors specifically mentioned in the August 9, 2016 discussion between JONES and MELEGA.

21.     On or about December 15, 2016, defendant JONES caused $191,880 to be drawn against the Northwest Bank apartment complex loan and deposited into J.P Rentals' checking account at Northwest Bank.

22.     On or about December 15, 2016, defendant JONES caused a $200,000 check to be drawn on J.P. Rentals' Northwest Bank checking account and made payable to South East National Bank.  The $200,000 check was taken to South East National Bank in Moline, Illinois, deposited, and applied against an outstanding home equity loan of defendant JONES's family members, which had previously been in default status.

23.     On or about April 21, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulent vehicle invoices purporting to represent the sale of four specific vehicles to I-80 Equipment, when in fact, no such agreement to sell the vehicles existed.

24.     On or about April 21, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the four vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

25.     On or about April 21, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $197,833 for the purported purchase of the four specific vehicles, and attaching the forged invoices purporting to document the sale of the four specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

26.     On or about May 10, 2017, defendants MELEGA and JONES produced and caused to be produced a forged, false, and fraudulent vehicle invoice purporting to represent the sale of a specific vehicle to I-80 Equipment, when in fact, no such agreement to sell the vehicle existed.

27.     On or about May 10, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the vehicle falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

28.     On or about May 10, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $32,080 for the purported purchase of the specific vehicle, and attaching the forged invoice purporting to document the sale of the specific vehicle to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

29.     On or about June 29, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulent vehicle invoices purporting to represent the sale of six specific vehicles to I-80 Equipment, when in fact, no such agreement to sell the vehicles existed.

30.     On or about June 29, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the six vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

31.     On or about June 29, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $219,420 for the purported purchase of the six specific vehicles, and attaching the forged invoices purporting to document the sale of the six specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

32.     On or about July 17, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulently-inflated vehicle invoices purporting to represent the sale of three specific vehicles to I-80 Equipment, when in fact, the genuine invoices to purchase said vehicles reflected a significantly lower sale prices.

33.     On or about July 17, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the three vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

34.     On or about July 17, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $115,091.04 for the purported purchase of the three specific vehicles, and attaching the forged and fraudulently-inflated invoices purporting to document the sale of the three specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

35.     On or about July 19, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulently-inflated vehicle invoices purporting to represent the sale of seven specific vehicles to I-80 Equipment.  In fact, I-80 Equipment received invoices for the vehicles from a supplier, but at lower prices than the fraudulently-altered invoices, and never purchased the vehicles.

36.     On or about July 19, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the seven vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

37.     On or about July 19, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $245,288 for the purported purchase of the seven specific vehicles, and attaching the forged invoices purporting to document the sale of the seven

specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

38.     On or about July 25, 2017, defendants MELEGA and JONES produced and caused to be produced a forged, false, and fraudulent vehicle invoice purporting to represent the sale of a specific vehicle to I-80 Equipment, when in fact, no such agreement to sell the vehicle existed.

39.     On or about July 25, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the vehicle falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

40.     On or about July 25, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $99,723.40 for the purported purchase of the specific vehicle, and attaching the forged invoices purporting to document the sale of the specific vehicle to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

41.     On or about July 27, 2017, defendants MELEGA and JONES produced and caused to be produced a forged, false, and fraudulently-inflated vehicle invoice purporting to represent the sale of a specific vehicle to I-80 Equipment, when in fact, the legitimate invoice to sell the vehicle was for a significantly lower price.

42.     On or about July 27, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the vehicle falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

43.     On or about July 27, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $55,273.60 for the purported purchase of the specific vehicle, and attaching the forged and fraudulently-inflated invoice purporting to document the sale of the specific vehicle to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

44.     On or about September 6, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulently-inflated vehicle invoices purporting to represent the sale of two specific vehicles to I-80 Equipment, when in fact, the legitimate invoices to sell the vehicles were for significantly lower prices.

45.     On or about September 6, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the two vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

46.     On or about September 6, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $89,611.20 for the purported purchase of the two specific vehicles, and attaching the forged and fraudulently-inflated invoices purporting to document the sale of the two specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

## COUNT ONE
### (Conspiracy to Commit Bank Fraud)

47.     The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 46

of this Indictment as though fully set forth herein.

48.     From in or about August of 2016, and continuing through at least November of

2017, in the Central District of Illinois, and elsewhere, the defendants,

### ERIK RICHARD JONES, and
### MITCHELL ALLEN MELEGA,

did knowingly and unlawfully conspire with others known and unknown to the Grand Jury to

commit an offense against the United States, that is, bank fraud, in violation of Title 18, United

States Code, Section 1344.

## OVERT ACTS

49.     In furtherance of this conspiracy and to effect the objects thereof, there were

committed by the defendants, in the Central District of Illinois and elsewhere, one or more of the

following overt acts:

50.     On or about August 3, 2016, defendants JONES and MELEGA directed an I-80

Equipment employee to obtain a list of vehicles from a vehicle supplier for the purpose of

submitting them to First Midwest Bank as if I-80 Equipment were purchasing them, obtaining

advances against the purported purchases, then diverting the money to pay other past due bills of

I-80 Equipment.

51.     On or about August 5, 2016, defendants MELEGA and JONES produced and

caused to be produced forged, false, and fraudulent vehicle invoices purporting to represent the

sale of 23 specific vehicles from the list obtained by the employee to I-80 Equipment, when in

fact, no such agreement to sell the vehicles existed.

52.     On or about August 5, 2016, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the 23 vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

53.     On or about August 5, 2016, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $776,867.20 for the purported purchase of 23 specific vehicles, and attaching the forged invoices purporting to document the sale of the 23 specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

54.     On or about August 9, 2016, defendants JONES and MELEGA discussed drawing funds from the Northwest Bank commercial real estate loan that was to be used to purchase and renovate an apartment complex in Silvis, Illinois, and instead diverting them to pay expenses of I-80 Equipment.

55.     On or about August 12, 2016, defendants JONES and MELEGA caused $225,000 to be drawn against the Northwest Bank apartment complex loan and deposited into J.P Rentals' checking account at Northwest Bank.

56.     On or about August 13, 2016, defendants JONES and MELEGA caused a $200,000 check to be drawn on J.P. Rentals' Northwest Bank checking account, made payable to I-80 Equipment, and deposited into I-80 Equipment's bank account at First Midwest Bank.

57.     On or about August 16, 2016, defendants JONES and MELEGA caused a $70,180.79 payment to an I-80 Equipment creditor to be made from funds in I-80 Equipment's First Midwest Bank account.  This payment was made to one of the creditors specifically mentioned in the August 9, 2016 discussion between JONES and MELEGA.

58.     On or about December 15, 2016, defendant JONES caused $191,880 to be drawn against the Northwest Bank apartment complex loan and deposited into J.P Rentals' checking account at Northwest Bank.

59.     On or about December 15, 2016, defendant JONES caused a $200,000 check to be drawn on J.P. Rentals' Northwest Bank checking account and made payable to South East National Bank.  The $200,000 check was taken to South East National Bank in Moline, Illinois, deposited, and applied against an outstanding home equity loan of defendant JONES's family members, which had previously been in default status.

60.     On or about April 21, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulent vehicle invoices purporting to represent the sale of four specific vehicles to I-80 Equipment, when in fact, no such agreement to sell the vehicles existed.

61.     On or about April 21, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the four vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

62.     On or about April 21, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $197,833 for the purported purchase of the four specific vehicles, and attaching the forged invoices purporting to document the sale of the four specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

63.     On or about May 10, 2017, defendants MELEGA and JONES produced and caused to be produced a forged, false, and fraudulent vehicle invoice purporting to represent the

sale of a specific vehicle to I-80 Equipment, when in fact, no such agreement to sell the vehicle existed.

64.     On or about May 10, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the vehicle falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

65.     On or about May 10, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $32,080 for the purported purchase of the specific vehicle, and attaching the forged invoice purporting to document the sale of the specific vehicle to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

66.     On or about June 29, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulent vehicle invoices purporting to represent the sale of six specific vehicles to I-80 Equipment, when in fact, no such agreement to sell the vehicles existed.

67.     On or about June 29, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the six vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

68.     On or about June 29, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $219,420 for the purported purchase of the six specific vehicles, and attaching the forged invoices purporting to document the sale of the six specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

69.     On or about July 17, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulently-inflated vehicle invoices purporting to represent the sale of three specific vehicles to I-80 Equipment, when in fact, the genuine invoices to purchase said vehicles reflected a significantly lower sale prices.

70.     On or about July 17, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the three vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

71.     On or about July 17, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $115,091.04 for the purported purchase of the three specific vehicles, and attaching the forged and fraudulently-inflated invoices purporting to document the sale of the three specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

72.     On or about July 19, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulently-inflated vehicle invoices purporting to represent the sale of seven specific vehicles to I-80 Equipment.  In fact, I-80 Equipment received invoices for the vehicles from a supplier, but at lower prices than the fraudulently-altered invoices, and never purchased the vehicles.

73.     On or about July 19, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the seven vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

74.     On or about July 19, 2017, defendant MELEGA emailed First Midwest Bank

personnel requesting a line of credit advance of $245,288 for the purported purchase of the seven specific vehicles, and attaching the forged invoices purporting to document the sale of the seven specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

75.    On or about July 25, 2017, defendants MELEGA and JONES produced and caused to be produced a forged, false, and fraudulent vehicle invoice purporting to represent the sale of a specific vehicle to I-80 Equipment, when in fact, no such agreement to sell the vehicle existed.

76.    On or about July 25, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the vehicle falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

77.    On or about July 25, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $99,723.40 for the purported purchase of the specific vehicle, and attaching the forged invoices purporting to document the sale of the specific vehicle to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

78.    On or about July 27, 2017, defendants MELEGA and JONES produced and caused to be produced a forged, false, and fraudulently-inflated vehicle invoice purporting to represent the sale of a specific vehicle to I-80 Equipment, when in fact, the legitimate invoice to sell the vehicle was for a significantly lower price.

79.    On or about July 27, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the vehicle falsely representing that the information submitted in connection with the advance request was true,

complete, and correct.

80.     On or about July 27, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $55,273.60 for the purported purchase of the specific vehicle, and attaching the forged and fraudulently-inflated invoice purporting to document the sale of the specific vehicle to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

81.     On or about September 6, 2017, defendants MELEGA and JONES produced and caused to be produced forged, false, and fraudulently-inflated vehicle invoices purporting to represent the sale of two specific vehicles to I-80 Equipment, when in fact, the legitimate invoices to sell the vehicles were for significantly lower prices.

82.     On or about September 6, 2017, defendant JONES prepared and caused to be prepared a Borrowing Base Certificate in connection with the purported purchase of the two vehicles falsely representing that the information submitted in connection with the advance request was true, complete, and correct.

83.     On or about September 6, 2017, defendant MELEGA emailed First Midwest Bank personnel requesting a line of credit advance of $89,611.20 for the purported purchase of the two specific vehicles, and attaching the forged and fraudulently-inflated invoices purporting to document the sale of the two specific vehicles to I-80 Equipment and the false Borrowing Base Certificate executed by JONES.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO through SEVEN
### (Bank Fraud)

84.     The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 83

of this Indictment as though fully set forth herein.

85.     On or about the date listed below for each count, in the Central District of Illinois,

and elsewhere, the defendants,

### ERIK RICHARD JONES, and
### MITCHELL ALLEN MELEGA,

executed the scheme and artifice to defraud First Midwest Bank, as set forth above, in the

manner set forth below, that is, that the defendants submitted and caused to be submitted the

following requests for line of credit advances against the purported purchase of the following

vehicles, when in fact, as the defendants then and there well knew, I-80 Equipment had no

agreement to purchase said vehicles from their purported sellers for the purported prices, that the

purported invoices submitted in connection with the below-listed requests for funds were false,

fraudulent, and forged:

| Count | Date | Number of Vehicles | Amount Advanced |
|-------|------|--------------------|-----------------|
| 2 | April 21, 2017 | 4 | $197,833 |
| 3 | May 10, 2017 | 1 | $32,080 |
| 4 | June 29, 2017 | 6 | $219,420 |
| 5 | July 25, 2017 | 1 | $99,723.40 |
| 6 | July 27, 2017 | 1 | $55,273.60 |
| 7 | September 6, 2017 | 2 | $89,611.20 |

Each in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNTS EIGHT through NINE
### (Bank Fraud)

86.     The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 85

of this Indictment as though fully set forth herein.

87.     On or about the date listed below for each count, in the Central District of Illinois,

and elsewhere, the defendants,

**ERIK RICHARD JONES, and
MITCHELL ALLEN MELEGA,**

executed the scheme and artifice to defraud Northwest Bank, as set forth above, in the manner

set forth below, that is, that the defendants submitted and caused to be submitted requests to

Northwest Bank against J.P Rentals' line of credit for improvements that were to be made to a

particular apartment complex owned by J.P. Rentals, when in fact, as the defendants then and

there well knew, the funds would not be used to fund property improvements, but were instead

diverted to other uses on the dates and in the amounts set forth below:

| Count | Date | Amount |
|-------|------|--------|
| 8 | August 13, 2016 | $200,000 |
| 9 | December 15, 2016 | $200,000 |

Each in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNTS TEN through TWELVE
### (Money Laundering)

88.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 87 of this Indictment as though fully set forth herein.

89.    On or about the dates set forth below, in the Central District of Illinois, and elsewhere, the defendants,

**ERIK RICHARD JONES, and**
**MITCHELL ALLEN MELEGA,**

did knowingly engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal and transfer of funds set out below, such property having been derived from a specified unlawful activity, that is, bank fraud:

| Count | Date | Amount | Transaction |
|---|---|---|---|
| 10 | August 8, 2016 | $700,000 | Wire transfer out of I-80 Equipment account at First Midwest Bank |
| 11 | July 18, 2017 | $127,654.25 | Wire transfer out of I-80 Equipment account at First Midwest Bank |
| 12 | July 19, 2017 | $96,004.51 | Payment from I-80 Equipment account at First Midwest Bank to pay off First Midwest Bank loan advance |

All in violation of Title 18, United States Codes, Sections 1957 and 2.

**A TRUE BILL**

/s/ Foreperson

FOREPERSON

/s/ AUSA John Mehochko

JOHN C. MILHISER
UNITED STATES ATTORNEY
JKM

22